UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────── X

KARINA GARCIA
355 8th Avenue, Apt. 9D
New York, NY 10001

MARCEL CARTIER
1983 Sedgwick Avenue, Apt. 6A
Bronx, NY 10453

YARI OSORIO
43-15 54th Street, Apt. 1F
Woodside, NY 11377

BENJAMIN BECKER
355 8th Avenue, Apt. 9D
New York, NY 10001

CASSANDRA REGAN
9031 Eldert Lane, Apt. 1
Woodhaven, NY 11421

    *as Class Representatives*
    *on behalf of themselves and others*
    *similarly situated*

    Plaintiffs,

    v.

MICHAEL R. BLOOMBERG
*in his official and individual capacities*
c/o The Law Department of the City of New York
Office of Corporation Counsel
100 Church Street
New York, NY 10007

Residential address for Mayor Bloomberg:
17 E 79th Street
New York, NY 10075

JUDGE RAKOFF

11 CIV 6957

**CLASS ACTION COMPLAINT**   ECF Case

**JURY TRIAL DEMANDED**



RECEIVED
OCT 04 2011
U.S.D.C. S.D.N.Y.
CASHIERS

1

The CITY OF NEW YORK
The Law Department of the City of New York
Office of Corporation Counsel
100 Church Street
New York, NY 10007

RAYMOND W. KELLY
*In his official and individual capacities*
NYPD Headquarters
One Police Plaza
New York, NY 10038

JANE and JOHN DOES 1 - 40

     Defendants.
_____X

# OVERVIEW
### (Class action constitutional rights lawsuit)

1. As a new protest movement for social and economic justice sweeps New York City and the country, the Police Department of the City of New York (NYPD) has engaged in an unconstitutional effort to disrupt and suppress the ability of the people to come together and advocate for social change using the time-honored methods of mass assembly and collective action.

2. On October 1, 2011, the NYPD engaged in a premeditated, planned, scripted and calculated effort to sweep the streets of protestors and disrupt a growing protest movement in New York. This lawsuit seeks to stop the NYPD from taking illegal actions against mass assembly protest.

3. As seen in the movements for social change in the Middle East and Europe, all movements for social justice, jobs, and democracy need room to breathe and grow and it is imperative that there be a halt to law enforcement actions used to shut down mass assembly and free expression of the people seeking to redress grievances.

4. On October 1, 2011, the NYPD engaged in a mass false arrest of approximately 700 persons who participated in, or were in proximity to, a demonstration and march crossing over the Brooklyn Bridge.

5. After escorting and leading a group of demonstrators and others well out onto the Brooklyn Bridge roadway, the NYPD suddenly and without warning curtailed further forward movement, blocked the ability of persons to leave the Bridge from the rear, and arrested hundreds of protestors in the absence of probable cause. This was a form of entrapment, both illegal and physical.

6. That the trap and detain mass arrest was a command-level-driven intentional and calculated police operation is evidenced by the fact that the law enforcement officials who led the demonstration across the bridge were command officials, known as "white shirts."

7. That the trap and detain mass arrest was an intentional and calculated police operation is also evidenced by the charade the police conducted – and themselves duly videotaped -- of speaking inaudibly into a bullhorn that could not be heard mere feet away from the officer, given the ambient noise.

8. The NYPD knew no audible communication was given. The NYPD also knew that the Constitution requires that any ostensible command must be heard by those who are expected to be bound by it.

9. Instead, the NYPD engaged in a performance, videotaped it, and sprang their trap. They then set their PR machine into motion, distributing widely edited videos of events to spin a false narrative of events to the public and media.

10. The NYPD, as a matter of policy and practice, engages in unconstitutional tactics to disturb, disrupt, penalize, infringe upon and criminalize constitutionally protected speech and assembly.

11. The NYPD's trap and detain actions interfere with freedom of association, assembly, speech and free movement.

12. The NYPD employs unconstitutional tactics to trap protesters, and others in physical proximity, on all sides, seize, detain and arrest those trapped/seized.  These actions are accomplished through force and threat of force in order to deprive, interfere with, and deter the exercise of constitutionally protected rights.

13. The conduct challenged herein is neither aberrational nor the consequence of overzealous but well-intentioned law enforcement. It is the implementation of a plan to disrupt political assembly and activities.

14. When a named plaintiff asked why the group was being arrested, one officer explained that they were being arrested because otherwise "you'd go right back down there." When the arrestee responded that it was not illegal to be demonstrating as part of Occupy Wall Street, the officer said that if it was up to her she would not have arrested them, but "if we let you go you will just keep protesting."

15. When another named plaintiff was at the precinct being processed for release, an officer stated, "next time you'll think twice about going out to protest."

16. The NYPD not only falsely arrested hundreds in a mass violation of Fourth Amendment rights, it illegally terminated demonstration activities in a mass violation of First Amendment rights.

17. The NYPD took a spirited and moving demonstration and sought to extinguish it. A protest march is moveable demonstration engaging with the public as it proceeds, in a pristine and classic form of democratic grassroots action and assembly. As a march continues it collects energy, collects participants, absorbing those who see it and hear it going by, who are moved by the political message and want to make common cause and join in.

18. The march from Wall Street was a spirited action, moving its message through New York into Brooklyn to communicate with and join with working people on the other side of the bridge.

19. The NYPD terminated the march, the message, the opportunity to communicate, and the opportunity for the people of New York to join together at that moment. The NYPD conducted a mass false arrest and extinguished the demonstration activity in an attempt to stop and prohibit further growing democratic and political collective action.

20. These unconstitutional actions also send a threatening message to the public that may be interested in making common cause with the political actions. That message is that free speech activities are criminalized by the police department and that joining in lawful First Amendment protected activities comes at the risk of police violence and false arrest.

21. These unconstitutional actions create a substantial chilling effect and deterrent to First Amendment protected activity as they burden free speech activities with the risk of arrest, of being wrongfully subject to the criminal process of the city, of being threatened with physical harm by the police, being bound with handcuffs and having one's identification and association with a demonstration be collected and recorded by the police and transferred to federal and other law enforcement authorities for data warehousing and collection.

22. This police conduct is anathema to democracy. These blatantly unconstitutional tactics have been ratified by the highest policy makers from the Chief of Police to the Mayor of New York City. Mayor Michael Bloomberg stated of the October 1 mass arrest, "The police did exactly what they were supposed to do."

23. This complaint seeks, in addition to monetary compensation, injunctive relief enjoining defendants from engaging in the challenged conduct in the future, an order nullifying the arrests, and expunging all arrest records.

## JURISDICTION

24. This civil rights action is brought pursuant to 42 U.S.C. § 1983 and § 1988. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1343(3) and (4) (Civil Rights).

25. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201 – 2202 and Fed.R.Civ.P. 57.

## VENUE

26. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 as the municipal defendant is deemed to reside therein and as a substantial part of the events or omissions giving rise to the claims occurred therein.

## PARTIES

### Named Plaintiffs

27. Plaintiff KARINA GARCIA, one of the named plaintiffs representing the class, is a public high school teacher and resides in New York. GARCIA was peaceably and lawfully participating in the demonstration and march when the police led, escorted and permitted the march onto the Brooklyn Bridge roadway. After leading the demonstration well out onto the

Brooklyn Bridge, police without cause, notice and opportunity to comply with any order, trapped and detained GARCIA, boxed GARCIA in without avenue of exit, and falsely detained and arrested GARCIA in the absence of probable cause.

28. Plaintiff MARCEL CARTIER, one of the named plaintiffs representing the class, is a student at Bronx Community College, a hip hop artist, and community activist and resides in Bronx, New York. CARTIER was peaceably and lawfully participating in the demonstration and march when the police led, escorted and permitted the march onto the Brooklyn Bridge roadway. After leading the demonstration well out onto the Brooklyn Bridge, police without cause, notice and opportunity to comply with any order, trapped and detained CARTIER, boxed CARTIER in without avenue of exit, and falsely detained and arrested CARTIER in the absence of probable cause.

29. Plaintiff YARI OSORIO, one of the named plaintiffs representing the class, is an unemployed college graduate looking for work, and resides in Queens, New York. OSORIO was peaceably and lawfully participating in the demonstration and march when the police led, escorted and permitted the march onto the Brooklyn Bridge roadway. After leading the demonstration well out onto the Brooklyn Bridge, police without cause, notice and opportunity to comply with any order, trapped and detained OSORIO, boxed OSORIO in without avenue of exit, and falsely detained and arrested OSORIO in the absence of probable cause.

30. Plaintiff BENJAMIN BECKER, one of the named plaintiffs representing the class, is an adjunct instructor at the City College of New York and a graduate student at the CUNY Graduate Center and resides in New York. BECKER was peaceably and lawfully participating in the demonstration and march when the police led, escorted and permitted the

march onto the Brooklyn Bridge roadway. After leading the demonstration well out onto the Brooklyn Bridge, police without cause, notice and opportunity to comply with any order, trapped and detained BECKER, boxed BECKER in without avenue of exit, and falsely detained and arrested BECKER in the absence of probable cause.

31. Plaintiff CASSANDRA REGAN, one of the named plaintiffs representing the class, is a recent graduate with a Masters degree in early childhood education and a community organizer and resides in Queens, New York. REGAN was peaceably and lawfully participating in the demonstration and march when the police led, escorted and permitted the march onto the Brooklyn Bridge roadway. After leading the demonstration well out onto the Brooklyn Bridge, police without cause, notice and opportunity to comply with any order, trapped and detained REGAN, boxed REGAN in without avenue of exit, and falsely detained and arrested REGAN in the absence of probable cause.

**Named and Unnamed Defendants**

32. Defendant MICHAEL R. BLOOMBERG is the Mayor of New York City and the chief policymaker for the CITY OF NEW YORK and its departments and agencies, including the NEW YORK CITY POLICE DEPARTMENT. Mayor BLOOMBERG has approved and ratified the unconstitutional conduct challenged herein. He is sued in his official and individual capacities.

33. Defendant CITY OF NEW YORK is a municipal corporation within the State of New York.

34. Defendant RAYMOND W. KELLY is the Commissioner of the New York City Police Department, which is an agency of the City of New York. KELLY is a policymaker for the CITY of NEW YORK and the NEW YORK POLICE DEPARTMENT. He is sued in his official and individual capacities.

35. Defendants JOHN or JANE DOES 1 – 30 are unidentified New York City police officials, officers or command staff who caused or did arrest the plaintiff class. These as-yet-unidentified defendants engaged in the mass arrest notwithstanding the absence of probable cause or lawful justification. These defendants are sued in their individual and official capacities.

36. Defendants JOHN or JANE DOES 31 – 40 are unidentified law enforcement officials, officers or agents who, although not employed by the NYPD, did engage in joint action with the NYPD and its officials, officers and agents to cause the mass false arrest of the plaintiff class.

## CLASS ACTION ALLEGATIONS

37. The proposed class is: All persons who were arrested on or at the Brooklyn Bridge in the mass arrest conducted on October 1, 2011.

38. The proposed class and their claims satisfy the requirements of Rule 23(b)(3) and, alternately, Rule 23(b)(2).

39. The proposed class of persons, which is composed of approximately 700+ persons, is too numerous for joinder.

40. The defendants did conduct a mass arrest of the class, as a group, and insodoing did act on grounds that apply generally to the class.

41. The class claims that the members' Fourth Amendment rights against false arrest and false imprisonment were violated raise common questions of law and fact that predominate over any questions affecting only individual members.

42. The class claims that the mass group arrest violated the class' and members' First Amendment rights to engage in, observe or associate with free speech and assembly activities

(i.e., through physical proximity), raise common questions of law and fact that predominate over any questions affecting only individual members.

43. The class claims that the mass group arrest was a pre-planned and deliberate course of false arrest, put into effect in order to retaliate against all those who would engage in the mass protest from Wall Street or associate with said protest, raise common questions of law and fact.

44. The claims of the named plaintiffs are typical of the claims of the class, as each was engaged in or associating with peaceable and lawful free speech and assembly activity when each was subjected to false arrest on October 1, 2011 as part of the same police sweep against the class as a group.

45. The named plaintiffs have a strong interest in the outcome of this action, have no conflicts of interest with the plaintiff class, and will fairly and adequately protect the interests of the class.

46. The named plaintiffs are represented by the undersigned counsel and with the attorneys of the Partnership for Civil Justice Fund. Undersigned counsel has successfully litigated a wide range of complex federal court constitutional rights matters a substantial part of which focuses on the rights of protestors to engage in free speech and dissent. Undersigned counsel was the sole lead counsel in <u>Becker, et al. v. District of Columbia</u>, et al., Civil Action No. 01 – 00811 (PLF), United States Court for the District of Columbia (trap and detain tactic used in mass false arrest of 700+ persons engaged in or in proximity to protest march) and <u>Barham v. Ramsey</u>, Civil Action No. 02-2283 (EGS), United States Court for the District of Columbia (trap and detain tactic used in mass false arrest of 400+ marchers, protestors and others in Pershing Park, Washington, D.C.), See <u>Barham v. Ramsey</u>, 434 F.3d 565 (D.C. Cir.

2006). The <u>Becker</u> case resulted in what is believed to be the largest financial settlement of a protest case in U.S. history. Significantly, these two class actions, as well as multiple additional protest lawsuits, have resulted in sweeping equitable relief and reform through settlement terms and resultant statutory reforms, establishing in the nation's capital an unprecedented bulwark against police misconduct in the context of mass demonstrations, including a ban on the trap and detain tactics challenged here. Counsel for the plaintiffs were lead counsel on the successful lawsuit challenging the City of New York's efforts to ban mass assembly on the Great Lawn of Central Park during the Republican National Convention of 2004, <u>National Council of Arab Americans, et al. v City of New York, et al.</u>, Civil Action No. 04 CV 6602 (WHP), United States District Court for the Southern District of New York. Plaintiffs' counsel is also currently counsel on the lawsuit challenging the trap and detain tactic used to mass arrest persons demonstrating over the killing of Oscar Grant in Oakland, CA, <u>Spalding, et al. v. City of Oakland, et al.</u>, Civil Action No. 11-CV-02867 (TEH), United States District Court for the Northern District of California. Counsel for the plaintiffs has the resources, expertise and experience to prosecute this action. Counsel for the plaintiffs knows of no conflicts among members of the class or between the attorneys and members of the class.

47. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The class is readily defined and prosecution of a class action will eliminate the need of repetitious litigation.

**FACTUAL ALLEGATIONS**

48. On October 1, 2011 demonstrators began marching from Zuccotti Park near Wall Street, which the demonstrators have dubbed Liberty Square. The demonstrators were engaged in

11

mass assembly and collective action calling for a shifting of resources in society from the 1% who hold the greatest concentration of wealth and corporate power, to the other 99%. The protestors' political chants included, "We are the 99 percent" and "Banks got bailed out, we got sold out!"

49. The march moved towards the Brooklyn Bridge. The first part of the march was able to access the pedestrian walkway of the Bridge. At a point there was a bottleneck as hundreds of protestors waited to enter the walkway.

50. The police, including command officials and other city officials, stood in the east bound roadway at the entrance of the bridge.

51. The command officials gave no audible warnings or orders to the mass of people assembled.

52. One officer, consulting with a non-uniformed person, spoke inaudibly into a bullhorn that could not be heard mere feet away from the officer, given ambient noise.

53. The NYPD knew no audible communication was given.

54. The NYPD also knew that the Constitution requires that any ostensible command must be heard by those who are expected to be bound by it.

55. There was no attempt by the NYPD to communicate a command, order or other message to the mass of people at the base of the bridge.

56. The inaudible presentation with the bullhorn, duly videotaped by the NYPD, was a charade, and is evidence of the police's intention conduct a mass false arrest.

57. Shortly thereafter, the law enforcement command officials and other representatives of the NYC municipality standing at the entrance to the roadway then turned their backs to the demonstrators and began leading them onto the roadway of the Brooklyn Bridge.

58. As marchers, including the plaintiff class, followed the police officials onto the Brooklyn Bridge roadway, there was no effort by the police to stop the marchers from entering the roadway. On the contrary, NYPD command staff or "white shirts" led the march.

59. Police not only led the march onto the Bridge roadway but escorted the marchers alongside as they walked onto the bridge.

60. After leading, taking, and escorting hundreds of demonstrators, including plaintiffs, well onto the Brooklyn Bridge roadway, law enforcement suddenly stopped, turned and prohibited further forward movement by the demonstrators.

61. Again, an officer spoke inaudibly into a bullhorn that could not be heard mere feet away from the officer, given ambient noise.

62. Again, the NYPD knew no audible communication was given.

63. This inaudible presentation with the bullhorn, duly videotaped by the NYPD, was also a charade, and evidences the police's intention conduct a mass false arrest by surprise and without notice or warning to the hundreds they had just permitted and led onto the bridge.

64. The plaintiff class was blocked from forward movement by the police.

65. The plaintiff class was prevented from moving backward as the NYPD prevented dispersal through the use of orange netting and police vehicles.

66. An officer at the front told a named plaintiff, "leave or get arrested." The plaintiff determined that there was no exit from the back because the police were blocking exit. She told the officer that they wanted to leave but that they were blocked on the back side too, and asked how they were to leave. The officer merely restated, "leave or get arrested."The NYPD's actions were not only unconstitutional, they were dangerous. The NYPD's actions put hundreds of persons in jeopardy of injury from forced compression of people with no avenue

of escape, threat of injury from stampede, or being forced over the side of the bridge. When the police action commenced and rippled back through the crowd, a completely peaceful demonstration was suddenly gripped with chaos and pandemonium. It is extremely fortunate that there was not mass injury from the NYPD's dangerous actions.

67. The plaintiff class was then subject to a mass false arrest by the NYPD.

68. The plaintiff class was handcuffed, taken into custody, processed and released through the night into the early morning hours.

69. At no time did the plaintiff class fail to obey a police order. At no time did the plaintiff class engage in disorderly conduct. At no time did the plaintiff class illegally block vehicular traffic on the Brooklyn Bridge, as the police had stopped vehicular traffic, opened up the roadway to pedestrian traffic, and themselves led and escorted the demonstration onto the roadway with police command officials at the lead.

## UNCONSTITUTIONAL POLICIES AND PRACTICES OF THE NYPD

70. The NYPD maintains the policy, practice and/or custom of abusing its state authority to disturb and disrupt targeted civil political assembly and mass demonstrations.

71. The NYPD maintains a policy, practice and/or custom of engaging in mass false arrests of protestors in the absence of probable cause.

72. The NYPD maintains a policy, practice and/or custom of engaging in mass group arrests without having probable cause to arrest the group as a group; and without having probable cause to arrest each person within the mass group to be arrested.

73. The NYPD maintains a policy, practice and/or custom of engaging in indiscriminate arrests of protestors in the absence of individualized probable cause, a practice typified by the NYPD's use of orange netting to capture and arrest masses of people without regard to

whether there exists probable cause to arrest the individuals trapped in such sweeping seizures of personage.

74. The NYPD maintains a policy, practice and/or custom of engaging in mass group arrests of protestors without giving the group fair notice, warnings or order to disperse (or comply with lawful police directives), and a meaningful and reasonable opportunity to comply. See Dellums v. Powell, 566 F.2d 167, 183 (D.C. Cir. 1977). In order to be constitutional, fair notice is notice that is likely to have reached *all* of the crowd despite any noise the demonstrators may have been making. Id. at 181-82 n.31. In order to be constitutional, the police must afford a meaningful avenue of exit if dispersal or clearing of an area has been ordered prior to arrest for failing to disperse or clear an area.

75. The NYPD and the City of New York maintains a policy, practice and/or custom of tolerating and failing to discipline unlawful police conduct against, specifically false arrest of, protestors.

76. The mass false arrest of the plaintiff class, were ordered or approved by command staff and by NYPD policy makers with sufficient authority as to constitute agency policy makers. This was a case of intentional entrapment and false arrest, committed with command staff at the front of the march, with command staff leading the march onto the bridge, with command staff apparently or presumably being advised at the time by Corporation Counsel to proceed with the mass arrest having led the march themselves onto the bridge.

77. The municipality has been deliberately indifferent to the violation of plaintiffs' constitutional rights.

78. The municipality has failed to adequately train or instruct the NYPD and its officers so as to prevent the foreseeable violation of the clearly established rights of protestors to be able to engage in peaceable assembly and free speech without being subject to mass false arrest.

79. The municipality is aware of, and tolerated, the practice of the NYPD in making mass false arrests of persons engaged in protest, for example, as reflected in the mass false arrests and punitive conditions in connection with the 2004 Republican National Convention protests in New York City.

80. The above-referenced policies, practices and/or customs, and also the failure to properly train its officers, constitute deliberate indifference on the part of the policymakers of the City of New York and of the New York Police Department to the constitutional rights of protestors as well as all those who would associate with such protestors.

81. The actions of the above-referenced defendants violated the following clearly established and well settled federal constitutional rights:

    a. Freedom from the unreasonable seizure of one's person;

    b. Freedom from government disruption of, interference with, or retaliation for, engagement in free speech, assembly and association activities.

82. NYPD Command Staff, identified and unidentified, did participate in, cause, approve or ratify the arrest of the plaintiff class. This included through issuing or approving or ratifying the order to arrest the class. Additionally, individual supervisory officers, had the duty to exercise appropriate command authority in their supervision of their subordinates and failed to do so, resulting in the unconstitutional deprivations complained of herein. Individual officers had the duty to intervene to prevent or halt unlawful and/or unconstitutional conduct complained of herein, including the mass false arrest of the class.

83. As a direct and proximate result of the acts or omissions of the defendants identified in this complaint and the other unidentified persons acting jointly, each of the plaintiffs has suffered monetary and non-monetary harm, including deprivation of constitutional rights under the First and Fourth Amendments to the U.S. Constitution, loss of liberty and related suffering and harm.

## CLAIMS

### COUNT I
### False Arrests On or At the Brooklyn Bridge
### (First Amendment; Fourth Amendment to the U.S. Constitution; 42 U.S.C. §1983)

84. Paragraphs 1 through 83 are incorporated by reference as if set forth herein.

85. Defendants' actions in participating in, executing, causing to be executed, approving or ratifying the arrest of the plaintiff class on October 1, 2011 on or at the Brooklyn Bridge violated the First and Fourth Amendment rights to be free of unlawful seizure and arrest; to be free of retaliatory government conduct including false arrest substantially motivated by an intent to disrupt and abridge constitutionally protected rights of free speech and assembly.

86. As a direct and proximate result of said acts or omissions, the plaintiff class has suffered and will continue to suffer injury, including the risk or likelihood of future acts of false arrest.

### PRAYER FOR RELIEF

87. WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant the following relief:

   a. Entry of a declaratory judgment that the disruption and preventive arrest tactics of the defendants constitute violations of the First and Fourth Amendments;

   b. Entry of a permanent injunction to enjoin and prohibit the CITY OF NEW YORK from executing the unconstitutional disruption and false arrest tactics complained of

herein, including but not limited to the trap-and-arrest tactic whereby without fair notice the NYPD engages in the mass false arrest of persons engaged in lawful free speech activity and peaceable assembly;

c. Entry of a permanent injunction to enjoin and prohibit the CITY OF NEW YORK from using orange netting to indiscriminately trap and arrest persons in the absence of the existence of particularized probable cause exists to seize and arrest each and every individual to be trapped and arrested by the netting;

d. Entry of a permanent injunction requiring defendants to seal and destroy the records derived from this arrest, including all photographs, fingerprints and other identification or descriptive information;

e. Entry of an order that disclosure be made in writing to plaintiffs and the Court as to all entities and agencies to which such material, and other intelligence information derived from or relating to the underlying events, has been disseminated and by whom gathered; and that all records gathered and disseminated be collected and sealed, including all copies of such disseminated records that may have been subject to further dissemination by others;

f. Entry of an order declaring the arrests to be null and void, and authorizing each individual class member to deny that such arrest ever occurred in response to any inquiry, such as employment or educational or any other nature of inquiry;

g. Compensatory damages against the defendants for violations of federal rights pursuant to 42 U.S.C. § 1983 in an amount appropriate to the proof adduced at trial;

h. Punitive damages against MICHAEL R. BLOOMBERG, and as against other defendants sued in their individual capacities, for causing, approving and/or ratifying

the arrest of the plaintiff class and for the consequential loss of freedom of expression and constitutionally protected rights of peaceable assembly;

i. An award of plaintiffs' reasonable attorneys' fees and costs and expenses pursuant to 42 U.S.C. §1988 and any other applicable statute or rule of law; and

j. Such other and further relief, including all appropriate equitable relief, as to the Court may seem just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY OF ALL ISSUES SO TRIABLE**

Dated: 10/4/11

Respectfully submitted,

_____
Mara Verheyden-Hilliard (MV7011)
PARTNERSHIP FOR CIVIL JUSTICE FUND
617 Florida Ave. N.W.
Washington, D.C. 20001
T. 202.232.1180;   F. 202-747-7747

_____
Carl Messineo (CM4500)
PARTNERSHIP FOR CIVIL JUSTICE FUND
617 Florida Ave. N.W.
Washington, D.C. 20001
T. 202.232.1180;   F. 202-747-7747