UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

KARINA GARCIA, et al.,

                                      Plaintiffs

          - against -                      11-CV-6957 (JSR)

MICHAEL R. BLOOMBERG, et al.,

                                      Defendants.

------------------------------------------------------------------------ x

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT, WITH PREJUDICE**

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 788-1599

Of Counsel:

Arthur G. Larkin
Dara L. Weiss

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT

    POINT I

        ALL OF PLAINTIFFS' FEDERAL CLAIMS
        SHOULD BE DISMISSED ....................................................................................... 1

        A.  Requirement of "Individualized" Probable
            Cause.............................................................................................................. 1

        B.  The Police did not Implicitly "Permit"
            Marching on the Roadways ........................................................................... 4

        C.  All "Doe" Defendants Are Entitled to Qualified
            Immunity........................................................................................................ 7

        D.  First and Fourteenth Amendment (Due Process)
            Claims ............................................................................................................ 8

    POINT II

        PLAINTIFFS' STATE LAW CLAIMS SHOULD
        BE DISMISSED ....................................................................................................... 8

    POINT III

        PLAINTIFFS' MONELL CLAIMS SHOULD BE
        DISMISSED ............................................................................................................. 8

CONCLUSION......................................................................................................................... 11

**TABLE OF AUTHORITIES**

**Cases** **Pages**

*Amore v. Novarro,*
   624 F.3d 522 (2d Cir. 2010) ................................................................................... 7

*Barham v. Ramsey,*
   434 F.3d 565 (D.C. Cir. 2006) ............................................................................ 3, 4

*Bell Atlantic v. Twombly,*
   550 U.S. 544 (2007) ..................................................................................... 2, 9, 10

*Carr v. District of Columbia,*
   587 F.3d 401 (D.C. Cir. 2009) ............................................................................ 2, 3

*Cox v. Louisiana,*
   379 U.S. (1965) ................................................................................................... 6, 7

*Devenpeck v. Alford,*
   543 U.S. 146 (2004) ............................................................................................ 7, 8

*Dinler v. City of New York,*
   607 F.3d 923 (2d Cir. 2010) .................................................................................. 10

*Douglas v. Victor Capital Group,*
   21 F. Supp. 2d 379 (S.D.N.Y. 1998) ...................................................................... 9

*Five Borough Bicycle Club v. City of New York,*
   684 F. Supp. 2d 423 (S.D.N.Y. 2010) .................................................................... 2

*Fogerty v. Gallegos,*
   523 F.3d 1147 (10th Cir. 2008) .............................................................................. 4

*Green v. City of New York,*
   465 F.3d 65 (2d Cir. 2006) .................................................................................... 10

*Jeffes v. Barnes,*
   208 F.3d 49 (2d Cir.),
   *cert. denied*, 531 U.S. 813 (2000) ........................................................................ 10

*Lee v. Sandburg*,
   136 F.3d 94, 102 (2d Cir. 1997) ............................................................................. 7

*Lennon v. Miller,*
   66 F.3d 416 (2d Cir. 1995) .................................................................................. 7, 8

*Papineau v. Parmley,*
   465 F.3d 46 (2d Cir. 2006) ...................................................................................... 4

**Cases**                                                                                                                                                          **Pages**

*Pembaur v. City of Cincinnati,*
   475 U.S. 469 (1986) ................................................................................................. 10

*People v. Jackson,*
   2007 NY Slip Op 52383U, 18 Misc.3d 1102A (Crim. Ct. N.Y. County Dec. 18,
   2007) ........................................................................................................................ 8

*Savino v. City of New York,*
   331 F.3d 63 (2d Cir. 2003) ....................................................................................... 8

*Scott v. Fisher,*
   616 F.3d 100 (2d Cir. 2010) ..................................................................................... 2

*Vodak v. Beal,*
   639 F.3d 738 (7th Cir. 2011) ............................................................................ 3, 4, 5

*Washington Mobilization Committee v. Cullinane,*
   566 F.2d 107 (D.C. Cir. 1977) .................................................................................. 3

*Ybarra v. Illinois,*
   444 U.S. 85 (1979) ................................................................................................... 4

*Young v. County of Fulton,*
   160 F.3d 899 (2d Cir. 1998) ................................................................................... 10

**Statutes**

N.Y.C. Adm. Code § 10-110(a), *et seq* ............................................................................ 2

Penal Law, § 240.20(5); DE 16, at 15-17 .................................................................... 6, 8

**Preliminary Statement**

In opposition to defendants' motion, plaintiffs argue that officers unlawfully arrested them because the officers could not have "reasonably" believed that every marcher heard the order to disperse, and that "individualized" probable cause was required to support each and every arrest made on the bridge.  But the case law on which plaintiffs rely is distinguishable or otherwise not controlling, and the pleaded facts and video proof show that it was reasonable for any officer to arrest a plaintiff either for marching in a parade without a permit or "obstruct[ing] vehicular … traffic" with reckless intent.  The officers' reasonable belief is supported by (i) the consistent warnings to marchers throughout the demonstration, which plaintiffs acknowledge they heard, to stay on the sidewalks and off the streets so as not to block traffic, and (ii) marchers' entering the traffic lanes of the bridge at the same time that vehicular traffic was entering onto those lanes.

In addition, plaintiffs argue that their Monell claims should not be dismissed until they have had an opportunity to conduct discovery – but the Supreme Court has rejected this approach, particularly in a "potentially massive" lawsuit such as this one.  Plaintiffs arguments underscore the absence of "sufficient factual matter" necessary to support their municipal liability claims.  For these reasons, defendants' motion should be granted in its entirety.  Since plaintiffs already have amended their complaint twice, leave to re-plead should be denied.

**Argument**

**I.      All of Plaintiffs' Federal Claims Should be Dismissed**

      **A.      Requirement of "Individualized" Probable Cause**

Plaintiffs assert that "particularized or individualized probable cause" must be shown to support each and every arrest made on Brooklyn Bridge.  (DE 19, at 3-5)  They also assert that

not all marchers heard the warnings to disperse and that the arrest of any marcher who did not hear the warnings violated the constitution. (*Id*. at 3)  This argument should be rejected.

First, officers had individualized probable cause to arrest anyone who marched onto the roadway of the bridge because the marchers did not obtain a permit as required by the City's parade regulations, *see* N.Y.C. Adm. Code § 10-110(a), *et seq*.  The regulations on their face do not include any state of mind, or *mens rea*, requirement, and their constitutionality has been upheld by the only judge of this court to have considered the issue.  *Five Borough Bicycle Club v. City of New York*, 684 F. Supp. 2d 423, 451 (S.D.N.Y. 2010) (parade regulations "are narrowly tailored to achieve … the City's valid and substantial interest in securing the orderly use of public roadways for the safety and convenience of travelers").[1]  Because the marchers did not obtain a permit, all arrests on the bridge were lawful (*see* DE 16, at 6-8, citing cases).

Second, the pleaded facts and video proof demonstrate that it was reasonable for the officers to treat plaintiffs and the putative class members as a group.  *Cf. Carr v. District of Columbia*, 587 F.3d 401, 407-8 (D.C. Cir. 2009); *Washington Mobilization Committee v. Cullinane*, 566 F.2d 107, 121 (D.C. Cir. 1977) ("the tenor of the demonstration as a whole … determines whether the police may intervene; … if it is substantially infected with violence or obstruction the police may act to control it as a unit").  Throughout the march, the police consistently warned marchers to stay on the sidewalks and out of the roadways so as not to block traffic. (DE 16, at 12-15)  The police also issued warnings to disperse through a bullhorn at the narrow entrance to the Brooklyn Bridge. (*Id*.)  Despite all of these warnings, marchers entered

---

[1] Plaintiffs allege that the regulation, if construed to impose strict liability, is unconstitutional (DE 13, ¶ 229), but this allegation is not entitled to any weight. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (on motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Even if the regulation were found to be unconstitutional, that finding would not affect defendants' entitlement to qualified immunity if the court is inclined to grant it.  *Scott v. Fisher*, 616 F.3d 100, 108 (2d Cir. 2010).

the roadway and blocked vehicular traffic. In these circumstances, officers "form[ed] a reasonable belief that the entire crowd [was] acting as a unit and therefore all members of the crowd violated the law." *Carr*, 587 F.3d at 408; *compare Vodak v. Beal*, 639 F.3d 738, 745 (7th Cir. 2011) (arrests would have been proper if police "reasonably believed that the protesters who were arrested, *or at least most of them*, had heard the [dispersal] orders") (emphasis added).

The decisions on which plaintiffs rely involve mass arrests of demonstrators <u>and</u> non-demonstrators alike, one key reason why those courts found that "group probable cause" did not apply. In *Vodak*, the police arrested protesters and others five blocks away from where dispersal orders were given. The tactics resulted in arrests of "people who weren't part of the march but were just trying to get home." *Vodak*, 639 F.3d at 744. In *Barham v. Ramsey*, 434 F.3d 565 (D.C. Cir. 2006), the defendants authorized the arrest of <u>everyone</u> inside a public park (386 individuals) based on the conduct of demonstrators inside and outside the park. Because "pedestrian traffic flowed freely into the park in the hour before the arrests … [and] moved just as freely out of the park" during that time, the arresting officers lacked "individualized" probable cause to arrest everyone inside the park. *Id*. at 574. The facts in *Barham* did not suggest that the demonstrators "operated as a cohesive unit that entered or left the park intact." *Id*. at 569. The court denied qualified immunity to the defendants. *See id*.

Other decisions involve the arrest of an entire group of demonstrators based on the unlawful conduct of some members of that group. In *Papineau v. Parmley*, 465 F.3d 46 (2d Cir. 2006), the court denied qualified immunity because "an issue of fact … exists as to whether a reasonable police officer would have believed that he or she could disperse the otherwise peaceable demonstration because a few individuals within that crowd had violated the law at an earlier time and desisted before the dispersal." *Id*. at 59. In *Fogerty v. Gallegos*, 523 F.3d 1147

(10th Cir. 2008), the court denied qualified immunity because the plaintiff merely "was a participant in an antiwar protest where some individuals may have broken the law." *Id*. at 1158. In *Ybarra v. Illinois*, 444 U.S. 85 (1979), the Court held that when executing a search warrant inside a bar, the police must have "particularized" probable cause to search customers, and may not search everyone inside. *Id*. at 90-91. The facts did not involve arrests at a demonstration.

Here, in contrast to *Vodak* and *Barham*, all of the persons arrested were part of the larger demonstration and engaged in the same conduct that supported probable cause, viz., marching onto the roadway of the bridge. (DE 13, ¶¶ 4, 20, 55, 62-85, 87-88, 104-14) And here, in contrast to *Papineau* and *Fogerty*, plaintiffs did not merely participate in a demonstration where others broke the law. Rather, they too engaged in the same conduct for which all members of the group were arrested – again, marching onto the roadway of the bridge. (*See id*., ¶¶ 116-27)

### B. The Police did not Implicitly "Permit" Marching on the Roadways

Plaintiffs assert that the police "permit[ted] a march … to be present upon an ordinarily prohibited area and then, … arrest[ed] the marchers for having marched without permission or for being in [that same] ordinarily prohibited area." (DE 19, at 7-8) Plaintiffs assert that these actions constituted "an indefensible sort of entrapment." (*Id*. at 8) This argument lacks merit.

First, the police never permitted the marchers to block vehicular traffic or to occupy roadways during the march, the type of conduct "prohibited" by the parade regulations and the Disorderly Conduct statute. (DE 16, at 6-12 (parade regulations), 12-17 (disorderly conduct)) Plaintiffs argue that because the police allowed "marchers to proceed upon the roadway in ways ordinarily prohibited," including by allowing marchers "to cross upon the roadway against the traffic signal" at other points in the march (DE 19, at 10), they had implied permission to enter the roadway of the bridge when the march arrived there. But even in ordinary conditions,

4

officers have the authority to direct pedestrians and vehicles in order to ensure public safety, whether against the traffic signal or not. That officers did so during this march cannot be viewed as granting permission to occupy the traffic lanes of the Brooklyn Bridge, particularly where the officers' conduct was accompanied by warnings to stay on the sidewalks and out of the streets.

Second, the decisions on which plaintiffs rely are – again – materially distinguishable. In *Vodak*, the Chicago police regularly utilized a "standard route for unpermitted marches," allowing such marches to take place on designated streets. The court held that when the police allow an "unpermitted" march to proceed on the standard route consistent with the regular practice, they must make efforts to ensure that dispersal orders are audible to those later arrested. *Vodak*, 639 F.3d at 745-46. Given the sheer number of marchers (over 8,000), and the vast area the group covered (more than five city blocks), it was not "reasonable" for officers to believe that dispersal orders given at one location were heard by persons later arrested five blocks away. In addition, there was no independent basis to arrest the marchers because they "were not threatening … the safety of the police or other people." *Id.* at 746.

Here, in contrast, plaintiffs do not (and cannot) allege that the NYPD has a "standard route for unpermitted marches" in Lower Manhattan, across the Brooklyn Bridge, or in any other part of the City. Furthermore, the NYPD's dispersal orders were given in the same area where marchers were later arrested, viz., at the entrance to the roadway of the bridge, not five blocks away, and those dispersal orders were consistent with all prior orders to the crowd to stay off the roadways, making it "reasonable" for officers to believe that marchers understood they were not permitted to march onto the bridge. Finally, police had an independent basis to arrest the marchers for Disorderly Conduct, because they proceeded onto the roadway and halted vehicular traffic for hours. *See* Penal Law, § 240.20(5); DE 16, at 15-17 (citing cases).

In *Cox v. Louisiana*, 379 U.S. 559 (1965), the petitioner was convicted of violating a state law that prohibited demonstrations "near" a courthouse. The statute plainly "foresees a degree of on-the-spot administrative interpretation by officials charged with responsibility for … enforcing it," *id.* at 568, because the term "near" is ambiguous. Exercising their discretion, local officials gave permission to the petitioner and others to demonstrate in an area deemed far enough from the courthouse. The petitioner appeared at the demonstration and shouted words that the sheriff believed threatened a breach of the peace. The sheriff then arrested him for demonstrating "near" a courthouse. *Id*. at 571-72. The Supreme Court overturned the conviction because "to sustain appellant's later conviction for demonstrating where [local officials] told him he could would be to sanction an indefensible sort of entrapment by the State – convicting a citizen for exercising a privilege which the State had clearly told him was available to him." *Id*. at 571.

Here, in contrast to the statute in *Cox*, the parade regulations and the disorderly conduct statute do not vest discretion with the police. Rather, both prohibit pedestrian traffic on roadways in certain circumstances, and the police enforced this prohibition throughout the march. Unlike the police in *Cox*, the police here did not exercise statutory discretion to grant demonstrators permission to enter an area and then arrest them when they did so.

### C.     All "Doe" Defendants Are Entitled to Qualified Immunity

Plaintiffs assert that the "Doe" defendants are not entitled to qualified immunity based on the parade regulations because they were arrested for Disorderly Conduct, not for violating the regulations. According to plaintiffs, qualified immunity may only be based on "the objective reasonableness of [defendants'] *chosen course of action*" which limits the analysis to "*the elements of the offense for which plaintiff was arrested*" and no other possible crimes. (DE 19, at 9 (quoting *Lennon v. Miller*, 66 F.3d 416, 421-24 (2d Cir. 1995) (emphasis in original))

Plaintiffs appear to misconstrue the governing law. Since *Devenpeck v. Alford*, 543 U.S. 146 (2004), the standard in false arrest cases brought under Section 1983 is "objective" reasonableness, which means that if reasonable officers could disagree as to whether probable cause existed for any crime, then qualified immunity is appropriate. (DE 16, at 6 (citing cases)) The officer's "subjective reason for making the arrest" is irrelevant. *Devenpeck*, 543 U.S. at 153. *Lennon* pre-dates *Devenpeck* and cannot be read to limit qualified immunity solely to those crimes with which the plaintiff was charged. *Cf. Devenpeck*, 543 U.S. at 153-54.

Furthermore, qualified immunity is appropriate if either the right plaintiff asserts is not clearly established, or the defendants' conduct was objectively reasonable even though it may have violated a clearly established right. *Lennon*, 66 F.3d at 420; *Lee v. Sandburg*, 136 F.3d 94, 102 (2d Cir. 1997) (qualified immunity appropriate "if the court finds that the rights asserted by the plaintiff were not clearly established … *or* no reasonable jury, … could conclude that it was objectively unreasonable for the defendant to believe" that his conduct violated a clearly established right) (emphasis in original); *see Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) ("arguable probable cause" will support qualified immunity). As defendants have shown, the right that plaintiffs assert, viz., to march in a parade without a written permit but allegedly with implied permission from officers on the scene, is not clearly established. (DE 16, at 8-12)

Apart from the parade regulations, it was "objectively reasonable" for any officer to arrest a plaintiff for Disorderly Conduct. Throughout the march, police consistently directed marchers to stay on the sidewalks and off the streets, and not to block traffic. At the entrance to the bridge, the march stopped and the marchers squarely faced a row of police officers. At that time, an officer repeated the warnings into a bullhorn and directed the crowd to disperse, while vehicular traffic continued to enter onto the bridge. Despite the warnings and continuous flow of

traffic, the crowd defiantly chanted, "Take the bridge!"  (DE 16, at 12-15)  Accordingly, it was "objectively reasonable" for officers to believe that anyone who marched onto the bridge was "obstruct[ing] vehicular … traffic" with reckless intent.  *See* Penal Law, § 240.20(5); *People v. Jackson*, 2007 NY Slip Op 52383U, *2, 18 Misc. 3d 1102A (Crim. Ct. N.Y. County Dec. 18, 2007) (disorderly conduct statute only requires proof "from which the risk, … recklessly created" of public inconvenience, annoyance or alarm "might be inferred").  Knowledge of the warnings and the marchers' disregard of traffic conditions is deemed shared by all officers who made arrests.  *Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003) (for purposes of determining probable cause, "the knowledge of one [officer] is presumed shared by all").

### D. First and Fourteenth Amendment (Due Process) Claims

For the reasons set forth above, and based on the authorities previously cited (DE 16, at 18-19), plaintiff's First and Fourteenth Amendment claims likewise should be dismissed.

## II. Plaintiffs' State Law Claims Should be Dismissed

Plaintiffs assert that they have either complied with, or are exempt from, the notice of claim requirements, and therefore argue that the state law claims should not be dismissed.  (DE 19, at 17-18)  Plaintiffs, however, fail to address the other substantive arguments made in defendants' moving brief (*see* DE 16, at 20-21), and therefore have conceded these arguments and abandoned the claims.  *E.g., Douglas v. Victor Capital Group*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (dismissing claims not defended in opposition brief) (collecting cases).

## III. Plaintiff's *Monell* Claims Should be Dismissed

None of plaintiffs' arguments shows that their Monell claims are well-pleaded.  First, plaintiffs assert that they need discovery in order to develop these claims (DE 19, at 18-19), an approach to litigation rejected by the Supreme Court:  "[A] district court must retain the power to

8

insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed," because "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases" before trial or summary judgment. *Twombly*, 550 U.S. at 558-59 (emphasis added). These concerns are acute in this case, which involves 700 or more arrestees, dozens of officer-defendants and non-party witnesses, and the potential for massive document discovery. Plaintiffs' suggestion that discovery will prove up their Monell claims is not entitled to any weight on this motion.

Second, most of the allegations plaintiffs highlight in their opposition set forth conclusions, not facts, and are likewise not entitled to any weight. (DE 19, at 18 (citing DE 13 [Second Amended Complaint], ¶¶ 158-65), 23 (citing DE 13, ¶¶ 63, 67-71, 199, 201-2 (alleging involvement of Mayor Bloomberg and Commissioner Kelly in conclusory terms, "upon information and belief")) As the Supreme Court has held, "a formulaic recitation of the elements of [the] cause of action will not do." *Twombly*, 550 U.S. at 555.

Third, plaintiffs assert that they have alleged "hundreds of prior incidents of false arrest" which occurred prior to October 1, 2011, not just three as defendants contend. (DE 19, at 20) However, those purported "hundreds" of arrests occurred on three separate occasions. Since the first of those alleged "hundreds" of arrests was made, dozens of parades and marches have taken place in the City without mass arrests or the alleged use of "trap and detain" tactics. These events include the parades on St. Patrick's Day, Columbus Day, Memorial Day, Puerto Rican Flag Day and Israel Day, as well as the West Indian Day parade and the Thanksgiving Day parade (all annual events), and the special parades held in the "Canyon of Heroes" honoring veterans, sports figures, political leaders or others. On those occasions, the police have closed streets and allowed marchers to occupy roadways pursuant to the parade regulations, without

incident, most if not all of the time.  While plaintiffs assert that "hundreds" of demonstrators were arrested during the Republican National Convention in 2004, a vastly larger number – approximately 800,000 – lawfully demonstrated and were not arrested.  *See Dinler v. City of New York*, 607 F.3d 923, 930 (2d Cir. 2010).  Given the number of opportunities every year for the police to disrupt free expression and the extremely low number of arrests made, plaintiffs' allegations cannot plausibly support the inference of a "persistent or widespread" unlawful practice.  *See Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006).

Fourth, plaintiffs assert that the "sheer magnitude" of the Brooklyn Bridge arrests "indicate[s] a top-down command decision from which top policy-maker *direct* involvement can be reasonably and sufficiently inferred."  (DE 19, at 23; emphasis in original)  In order to establish municipal liability on this basis, plaintiffs must identify the policymakers whom they believe made specific decisions in this case, *see Jeffes v. Barnes*, 208 F.3d 49, 57-58 (2d Cir.), *cert. denied*, 531 U.S. 813 (2000), and plead facts sufficient to support the plausible inference that the policymaker(s) "directly caused" their injuries, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 (1986), by making the decision to arrest them.  Plaintiffs have fallen far short of these requirements:  Their assertion that the "sheer magnitude" of the arrests somehow plausibly suggests the "direct" involvement of Commissioner Kelly or the Mayor is devoid of substance, precisely the type of allegation held insufficient by the Supreme Court.  *See Twombly*, 550 U.S. at 557 (dismissing complaint that alleges facts "merely consistent with" defendant's liability).

Fifth, and finally, plaintiffs fail to address defendants' argument that their failure to train claim must be dismissed if this court concludes that the right they seek to vindicate by this lawsuit was not "clearly established" (*see* DE 16, at 25, citing *Young v. County of Fulton*, 160 F.3d 899, 904 (2d Cir. 1998)).  *Young* is controlling here.

**Conclusion**

For the foregoing reasons as well as those set forth in defendants' moving papers, defendant's motion should be granted and the Second Amended Complaint should be dismissed in its entirety, with prejudice.

Dated:	New York, New York
	January 13, 2012

                Respectfully submitted,

                MICHAEL A. CARDOZO
                Corporation Counsel of the City of New York
                *Attorney for Defendants*
                100 Church Street
                New York, New York 10007
                (212) 788-1599

          By:     /s/
              Arthur G. Larkin (AL 9059)
              Dara L. Weiss (DW 2502)
              Assistants Corporation Counsel