UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
KARINA GARCIA, ET AL.,

      Plaintiffs,  :  11-cv-6957(JSR)

  -v-         :  MEMORANDUM ORDER

MICHAEL BLOOMBERG, et al.,

      Defendants. :
------------------------------------- x

JED S. RAKOFF, U.S.D.J.

  Plaintiffs filed this purported class action against the City of New York, former Mayor Michael R. Bloomberg, former Commissioner of the New York City Police Department ("NYPD") Raymond W. Kelly, former NYPD Chief Joseph A. Esposito and several NYPD officers. Plaintiffs alleged that defendants are liable under 42 U.S.C. §1983 and New York state law for falsely arresting them for marching on the vehicular roadway of the Brooklyn Bridge (the "Bridge"). Plaintiffs now seek leave to file a proposed Third Amended Complaint ("TAC"). Because plaintiffs' proposed new allegations do not cure the defects of their Second Amended Complaint, the Court denies this request.

  By way of background, plaintiffs were arrested on October 1, 2011, during an unpermitted march from Zuccotti Park in Manhattan over the Bridge to Brooklyn. Because the Bridge's pedestrian walkway could not fit enough people, marchers began walking over the Bridge's vehicular roadway. Some believed that the police had tacitly given them permission to do so: although the police initially blocked the

roadway, the police later began walking along it in front of the marchers. Once the police and the marchers had gone midway across the Bridge, the police halted the marchers' progress, blocked egress from the Bridge, and arrested the marchers on the roadway.

Against these facts, this Court denied, in part, defendants' motion to dismiss plaintiffs' Second Amended Complaint, holding that the individual NYPD officers were not entitled to qualified immunity. *See Garcia v. Bloomberg*, 865 F. Supp. 2d 478 (S.D.N.Y. 2012) ("*Garcia I*"). On appeal, a panel of the United States Court of Appeals for the Second Circuit initially affirmed; but then, after the Court as a whole had decided to hear the matter in banc, the panel withdrew its initial affirmance, and reversed and remanded, with instructions to dismiss the Second Amended Complaint. *See Garcia v. Does*, 774 F.3d 168 (2d Cir. 2014) ("*Garcia II*"); *Garcia v. Does*, 779 F.3d 84 (2d Cir. 2014) ("*Garcia III*").

The TAC does contain some new allegations, most of which relate to Chief Esposito. Several of these new allegations concern the events of October 1, 2011. For instance, the TAC identifies Chief Esposito as the ranking police officer at the march. TAC ¶¶ 65, 149. He was also one of the officers who walked on the Bridge's roadway ahead of the marchers. *Id.* ¶ 122. On the Bridge, Esposito came to the conclusion that the police would have to arrest the marchers. *Id.* ¶

2

129. He called Commissioner Kelly and advised him that the NYPD would probably arrest the marchers. *Id.* 204-06, 216. Kelly approved the mass arrest, and Esposito later gave the order to arrest the marchers. *Id.* ¶¶ 65, 208, 213. The TAC further alleges Esposito admitted that he erred in not using police resources like scooters or mesh to block marchers from accessing the roadway. *Id.* ¶¶ 88, 93 133.

Other new allegations concern the command and decisionmaking structures of the NYPD, but again focusing on Esposito. For instance, the TAC alleges that Esposito had control over the Civil Disorder Unit, which responded to major protests such as the Occupy Wall Street movement. *Id.* ¶¶ 219-21. He did not need to check with Kelly before exercising control over the Civil Disorder Unit. *Id.* ¶¶ 222. Esposito also issued "Chief of Department memos" that established department-wide policy and were not required to be approved by Kelly. *Id.* ¶¶ 225-28. In September 2011, Kelly and Esposito discussed Occupy Wall Street marches occurring without permits. TAC ¶ 234. They determined that the NYPD would allow unpermitted Occupy Wall Street marches to occur, even if this resulted in marchers using roadways in a manner that would ordinarily be prohibited. *Id.* ¶¶ 240-42.

With the TAC's new allegations in mind, the Court considers plaintiffs' motion for leave to amend. "A party may amend its pleading . . . with the court's leave." Fed. R. Civ. P. 15(a)(2).

3

Although a court should freely give leave to amend when justice so requires, *id.*, it is proper for the court to deny leave when the amendments would be futile. *Hunt v. Alliance N. A. Gov't Income Trust, Inc.*, 159 F.3d 723, 728 (2d Cir. 1998). In particular, "if the claims would be subject to dismissal under Fed. R. Civ. P. 12(b)(6), the court should refuse to grant leave to amend rather than assent and then await a motion to dismiss." *Bank of New York v. Sasson*, 786 F. Supp. 349, 352 (S.D.N.Y. 1992). Accordingly, this Court reviews the TAC, in the light most favorable to plaintiffs, to determine whether it would survive a motion to dismiss.

On a motion to dismiss under Rule 12(b)(6), a court must determine whether a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For the purpose of the present motion, the Court considers the TAC; the parties' briefing, as well as the attached exhibits to the extent they refer to matters referenced in the TAC, such as excerpts of Esposito's deposition testimony in *Laugier v. City of New York*, No. 1:13-cv-06171-JMF, 2014 WL 6655283 (S.D.N.Y. Dec. 17, 2014), and *Sterling v. City of New York*, No. 1:12-cv-07086-RWS (S.D.N.Y. May 14, 2015); and the photographs and videos submitted with or incorporated into

4

plaintiff's Second Amended Complaint.[2] The Court takes as true the facts alleged in the TAC, *Almonte v. City of Long Beach*, 478 F.3d 100, 104 (2d Cir. 2007), so long as they are not contradicted by video evidence. *Garcia III* at 87-88.

The Court first considers plaintiffs' claims of municipal liability under 42 U.S.C. § 1983. "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (footnote omitted). A plaintiff may assert municipal liability claims under *Monell* even if individual municipal actors are entitled to qualified immunity. *See Askins v. Doe No. 1*, 727 F.3d 248, 254 (2d Cir. 2013). However, because *Monell* does not provide a separate cause of action but rather extends the liability of individual municipals actors to the municipality, if a plaintiff cannot show she has been a victim of a tort committed by municipal actors, the municipality cannot be held liable. *Id.* at 253. Here, if

---

[2] The Court may consider the videos and photographic evidence. *Garcia* III at 87 n.2; *Garcia* I at 483 n.1; *see also* Pls.' Mem. at 9 (explaining that plaintiffs intend the TAC to incorporate video and multimedia exhibits).

plaintiffs cannot show that they were falsely arrested, then they cannot established municipal liability.

Plaintiffs have failed to plausibly allege that they were falsely arrested. The Second Circuit generally looks to the law of the state in which the arrest occurred when analyzing § 1983 claims for false arrest. *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004). "Under New York law, the existence of probable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). The Second Circuit has already held that, in this case, the police had "sufficient evidence to establish probable cause on each of the elements of a disorderly conduct violation." *Garcia* III at 92.[3] Moreover, the Second Circuit held that the interactions between the police and the marchers, including any alleged grant of permission to march on the Bridge, were so ambiguous as to not displace this finding of probable cause. *Id.* at 96. According to the Second Circuit, the officers did not behave unlawfully. *Id.*

---

[3] This holding forecloses plaintiffs' argument that they did not violate the disorderly conduct statute because the intent element was missing. Pls.' Reply Mem. at 3-4. Plaintiffs' argument that Esposito's knowledge of a police escort on the Bridge negates the marchers' intent lacks merit. An arresting officer's knowledge does not alter an arrestee's intent.

6

These findings nip plaintiffs' municipal liability claims in the bud. None of the additional allegations in the TAC contradicts the Second Circuit's findings. The TAC's new material primarily concerns Esposito's authority, decisionmaking processes, and communications with Kelly. But the deliberations of the NYPD's command officers have no bearing on the Second Circuit's finding that the police had probable cause to arrest the marchers. It is true that the TAC does allege that police officers conveyed permission to march between Zuccotti Park and the Bridge. TAC ¶¶ 82-85. It also alleges that officers escorted marchers onto the roadway in a manner reasonably interpreted as a grant of permission to use the roadway. *Id.* ¶¶ 145-48. But the Second Circuit held that these circumstances, similarly alleged by the Second Amended Complaint, were insufficient to defeat qualified immunity. *Garcia* III at 96. Further allegations of limited permission earlier in the march or implied permission on the roadway are not sufficient to override this conclusion.

Plaintiffs' legal arguments that the Second Circuit's holding does not apply to their municipal liability claims also fail. Plaintiffs argue that the Second Circuit did not adjudicate whether their constitutional rights were violated but only addressed the qualified immunity issue. Pls.' Reply Mem. at 4. It is true that the ultimate issue on appeal was whether the individual NYPD officers were entitled to qualified immunity. However, to reach its

7

conclusion, the Second Circuit repeatedly made clear that its analysis applied to the law of probable cause, as well as the law of qualified immunity. *Garcia* III at 96. Plaintiffs and this Court are bound by the Second Circuit's holdings on probable cause and, consequently, its impact on municipal liability under *Monell*.[4]

The TAC's assertions of individual liability under § 1983 are futile for the same reasons. The TAC does not state new allegations that would permit the Court to hold that arguable probable cause did not exist. Plaintiffs only vaguely argue that Kelly and Esposito's conduct "could be factors that contribute to a loss of qualified immunity," Pls.' Reply Mem. at 1, but do not explain how the new allegations overcome the Second Circuit's reasoning.

The Second Circuit's holdings on probable cause also lead the court to conclude that the TAC's state law claims for false arrest, negligence, gross negligence, and negligent supervision are futile. TAC ¶ 309-13. "Under New York law, the existence of probable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 151-52 (2d Cir. 2006). Moreover, in New York, courts do not recognize a "negligent" false arrest claim. *See Rheingold v. Harrison*

---

[4] Because *Garcia* III binds this Court on the issue of probable cause, the Court does not reach the question of whether the TAC's new material would change the holding in *Garcia* I that plaintiffs failed to adequately plead municipal liability under *Monell*.

8

*Town Police Dep't*, 568 F. Supp. 2d 384, 395 n.3 (S.D.N.Y. 2008)(citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)("Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution.")).

For the foregoing reasons, the Court concludes that plaintiffs' proposed amendments are futile and denies their motion for leave to amend. The Clerk of the Court is directed to enter final judgment dismissing the complaint with prejudice and to close the case in its entirety.

SO ORDERED.

Dated:  New York, NY
        September 9, 2015

JED S. RAKOFF, U.S.D.J.